WILLIAM JOHN MARTIN, Plaintiff, v. BARRETT-CRAVENS COMPANY, Defendant.

Supreme Court, Special Term, Kings County, July 20, 1937.

*John D. Mastaglio* [*Alvin C. Cass* and *Jacques W. Bacal* of counsel], for the plaintiff.

*Benjamin C. Loder*, appearing specially [*Albert R. Eberlein* of counsel], for the defendant.

HALLINAN, J.   The defendant sold J. A. Melnick & Co. a portable elevator in New York.   The plaintiff, in the course of his employment with Melnick, sustained severe injuries as a result of some defects in the machine.   This action was subsequently instituted.

A summons and complaint was served by leaving a copy thereof in New York city with John Bebbington, alleged to be the managing agent of the defendant, an Illinois corporation, doing business in New York.   The latter, appearing specially, moved to vacate and set aside such service on the ground that no jurisdiction had been obtained since it was not doing business within the State, and that process had not been served upon any of the persons designated in section 229 of the Civil Practice Act.

This matter was duly referred to an official referee to take proof and report with his opinion upon the following matters:

(1) Was John Bebbington a managing agent of Barrett-Cravens Company within the meaning of subdivision 3 of section 229 of the Civil Practice Act?

(2) Was Barrett-Cravens Company at the time of the service of the summons herein doing business within the State of New York in such a sense and in such a degree as to subject it to the jurisdiction of the courts of the State of New York?

The learned official referee handed down an opinion and report resolving the issues submitted to him in the negative.

This report now comes before me for confirmation which involves also the determination of the original motion to vacate the service of process.   This motion is strenuously contested by the plaintiff upon the ground that the report is against the weight of evidence.

After reviewing the respective contentions of the parties and some of the testimony adduced, and pointing out certain cases urged by the defendant, the learned official referee concluded in his opinion: " I do not wish the plaintiff to feel that I have neglected in any way

the careful perusal of his two briefs — over a hundred pages in all. I do not deny the force of his authorities, and he has presented authorities with frankness, but I cannot escape from the conclusion that at all times this defendant was endeavoring to live up, so far as it could, to the provisions which freed it from responsibility such as is here sought to be laid upon it. I cannot feel the defendant was *in this State* as a going concern; I cannot feel that Bebbington, by any act of his that has been brought to my attention, could enlarge the powers that limited his activities in behalf of this defendant. It may be that the learned Justice to whom my report shall go, might consider that this is such a close case that the plaintiff should have the benefit of the doubt and that the service should be deemed good service under the rule. I cannot, however, myself escape from the feeling that this corporation has not been shown as derelict in its endeavor to escape or in its endeavor to carry on its business as a non-resident corporation, represented simply by a sales agent."

Reports of official referees to whom questions of fact have been referred to take testimony and report are generally adopted almost *pro forma*, because an experienced trier of facts, seeing and hearing the living witness, is better enabled to determine such issues than the justice to whom the matter is referred for confirmation. In this case, however, the learned official referee has more than once in his opinion specifically invited this court's review of his findings. Consequently, this court feels impelled to give this case a consideration unprejudiced by the adverse decision of the learned official referee.

Judge LEARNED HAND, in *Hutchinson* v. *Chase & Gilbert* (45 F. [2d] 139, 142), aptly characterized the approach to a problem such as is here presented when he said: " It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass."

The decisions upon the proposition are without number. Every case is determined upon its particular facts and circumstances. And upon those facts and circumstances the determination is made whether a foreign corporation upon which the jurisdiction of the local courts is sought is present within the State.

As was said by Mr. Justice DAVIS of the Appellate Division, Second Department, then sitting in the Fourth Department, in the case of *Cochran Box & Mfg. Co., Inc.,* v. *Monroe Binder Board Co.* (197 App. Div. 221, at p. 223; affd., 232 N. Y. 503): " As to what constitutes doing business within the State, each case must depend upon its own facts to show that this essential requirement of jurisdiction exists. (*International Harvester Co.* v. *Kentucky,* 234 U. S.

579.) There is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable us to say that the corporation is here. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259.) " (See, also, *International Harvester Co.* v. *Kentucky*, 234 U. S. 579; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259.)

To the learned official referee the defendant's " endeavor to carry on its business as a non-resident corporation represented simply by a sales agent " appeared to be worthy of emphasis. Said he: " I am impressed, as I review the whole case, that the defendant company was strenuously endeavoring to adhere to the rule which would relieve them from the charge of ' doing business in the State of New York.' "

That the defendant was strenuously endeavoring to sell its products in the State of New York without becoming amenable to the jurisdiction of its courts is beside the point. The referee's conclusion that it succeeded in so doing is stating the proposition negatively. The true issue is, irrespective of its endeavors to escape jurisdiction, were the regularly and systematically conducted activities of the defendant in New York of such nature as to warrant the inference that the corporation " is present " in the State?

In the words of Judge CARDOZO in *Tauza* v. *Susquehanna Coal Co.* (*supra*): " We are to say, not whether the business is such that the corporation may be prevented from being here, but whether its business is such that it *is* here. If in fact it is here, if it is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts."

The defendant is an Illinois corporation engaged in the manufacture and sale of " materials handling equipment " which term includes portable hand elevators, hand lift trucks, platform skids, material storage racks and hand trucks. It sells its products through sales representatives, to each of whom exclusive territory is assigned with the prohibition against soliciting in another territory unless " open."

To John Bebbington was assigned the territory consisting of the boroughs of Brooklyn, Manhattan, Bronx and Queens and the counties of Nassau and Suffolk, N. Y. Whatever doubt may exist with reference to his authority in relation to the activities of the defendant corporation in the State of New York as a result of the testimony of the witnesses before the referee, that doubt is conclusively resolved against the defendant by a consideration of its contract with him, to which the learned official referee did not advert in his opinion. It contended that for all practical purposes its sole

activity in the State of New York consisted simply in soliciting orders for its products manufactured in Chicago through sales representatives to whom exclusive territory was assigned and whose orders so solicited had to be submitted to Chicago for acceptance, in which event alone was a commission to be paid, there being no salary, drawing or expense account.

An examination of the contract with Bebbington and other documentary exhibits discloses, however, that not alone were the defendant's activities in New York not confined to mere solicitation, but that Bebbington was clothed with such authority and was in such relation to the defendant as to make him a managing agent, within the meaning of the statute, upon whom service of process is service upon the foreign corporation.

True, it had not filed a designation with the Secretary of State; it has neither funds nor bank accounts in this State; it does not conduct directors' or other corporate meetings within the State; Bebbington is neither its officer, stockholder, cashier or director nor in its employ on a salary basis, nor are there any assistants paid by the defendant; but the absence of these indicia, which are referred to in the authorities upon the subject herein involved, does not necessarily lead to the conclusion that the defendant is not conducting business within the State.

That the selling end of the defendant's business is at least of equal importance as its manufacturing is indicated not alone from the testimony of the witnesses and the text of its advertising matter, but the contract with Bebbington, which is in mimeographed form with either typewritten or longhand insertions, establishes that it sold its products to dealers only incidentally and to consumers directly principally. Its attitude toward " dealer business " is epitomized in the following language: " We suggest that you do not discourage this dealer business as it is much better to obtain their cooperation than to permit them to sell other makes." This contract, dated January 3, 1936, is labeled: " Interorganization Memo * * * Subject. Sales Contract and Quota Data for 1936. We have just completed the figuring of sales quotas for 1936. Yours is tabulated below." Bebbington's 1935 quota of sales is then given as compared with his actual performance. Then follows his 1936 quota. The contract provides for a bonus if the quota is fulfilled and a proportionately less bonus for a proportionally less fulfillment.

He is required to send in a quota of reports containing complete information " so that they can be handled in an intelligent manner in this office and in a manner that will bring the best results."

He is required to make inspection reports on lift-truck users in his territory and to visit the users of the defendant's products not less than once each year.

In testifying before the learned official referee the witnesses for the defendant stated that Bebbington had no power to accept orders or contracts for the corporation in any way; that all orders had to be received in Chicago for acceptance or rejection, and that he had no authority to deviate from the price list at all at any time and in any way, and that no quotations made by Bebbington were binding upon the defendant.

The contract, however, states a different story. Under the heading of "dealer arrangement" the following is found: "We will handle dealer business in your regular territory just the same as other business, inquiries will be referred on to you and you will be expected to *quote the dealer prices less whatever discounts you feel it necessary to establish, which discounts will be handled as an allowance*, you standing one half and the Barrett-Cravens Company the remaining half. * * * Once you have established discounts with dealers it is necessary that you advise us their name, address and the list of discounts so that we may card the information. *Then when this dealer writes us for this information we can confirm what you have already quoted him.*" (Italics mine.)

In addition, on page 4 of the contract, we find the following: " Allowances. Any allowance in prices, quantity, discount, trade-in of old equipment and the like, will be split fifty-fifty between the salesman and the Barrett-Cravens Company."

Thus Bebbington was given wide power and discretion to fix such discounts with dealers as *he felt necessary*, same to be handled as allowances and to be split fifty-fifty between himself and the defendant.

The provision of the contract on page 6 with respect to orders is significant: " Orders. All orders must be written to the Barrett-Cravens Company, and not to the salesmen — the original order must be sent to us. This is our only authority to bill direct to the customer, and if this procedure is not followed by the salesman carefully, our claim against the customer could be readily repudiated. Salesmen accepting verbal orders or sending us orders not signed by the customer are held responsible for any expense, should the customer refuse to accept the goods as ordered. Obtain the customer's order. If formal order is to be sent later, include the number on our order form or in telegraphic order. If customer's formal order is sent us, after mailing form always write, ' confirmation ' on it."

In other words, Bebbington was not interdicted from accepting verbal orders or unsigned orders nor warned that they would not be accepted by the home office. The sole penalty for entering into oral contracts or accepting oral orders was responsibility for any expense " should the customer refuse to accept the goods as ordered." Written orders were not required to be sent to Chicago for acceptance or rejection, but merely for billing. In other words, the orders obtained by Bebbington were not subject to approval or rejection by the home office.

The procedure followed in the sale to the Melnick Company of the portable elevator upon which the plaintiff was injured, as testified to without contradiction at the hearings, throws light upon the issues involved. The order dated April 10, 1936, on the order form of the Melnick Company addressed to the defendant in Chicago, Ill., was delivered to Bebbington in Brooklyn. There was no direct communication with the Chicago office of the defendant except when that office billed Melnick after filling and shipping the merchandise.

This is an apt illustration of the working out of the defendant's contract with Bebbington, above referred to. The Melnick order was not shown to be subject to acceptance in Chicago. The terms were agreed upon with Bebbington in Brooklyn, and the written order, embodying same, was delivered to Bebbington in Brooklyn. No formal order, subject to confirmation, referred to in the defendant's contract with Bebbington under the title " Orders," was involved. The Melnick order, thus delivered to Bebbington in Brooklyn, was, in the language of the defendant's own contract above referred to, its only " authority to bill direct to the customer," as otherwise its " claim against the customer could be readily repudiated." Under these circumstances I am of opinion that the contract between the Melnick Company and the defendant was made in Brooklyn, in the State of New York.

Other supporting evidence was introduced, consisting principally of advertising matter in which the defendant held itself out as having offices in a large number of cities in the United States wherein it furnished engineering services to customers, such as helping them work out their storage and material-handling problems, making inspections of equipment sold and replacing or repairing same as the occasion required, pursuant to its guaranty. The evidence indicated that in his territory Bebbington was the man through whom the defendant rendered these services, and that it was he through whom complaints were made and who brought them to the attention of the defendant.

Moreover, evidence was adduced that the defendant owned advertising material in the State of New York as well as equipment, which it loaned to the Melnick Company to facilitate its moving from one plant to another at the time that it purchased merchandise from the defendant.

Of more significance, however, is the evidence concerning the defendant's letterheads and telephone and mailing arrangements in New York. The Melnick Company received letters dated April 17 and May 5, 1936, respectively, on the letterheads of the defendant containing photographs of some of its appliances, upon which letterheads was printed the following:

" Send Reply to
Barrett-Cravens Company,
Room 1404, 15 Park Row,
*New York City*
Barclay 7-7894."

These letters are signed: " Barrett-Cravens Company, by John Bebbington, Agent."

Another letter, dated September 22, 1936, to the Melnick Company, is signed " John Bebbington, Agent, Barrett-Cravens Company."

When Bebbington interviewed the Melnick Company with respect to the order and the equipment involved herein, he presented a business card, the first part of which reads as follows:

" Barrett-Cravens Company
Lift-Trucks — Skids — Portable Elevators — Storage Racks
15 Park Row, Room 737
Represented by                                    New York City
J. Bebbington.                     Phone: Barclay 7-7894."

On the last page thereof appears a statement as follows:

" Handling BARRETT Equipment
Barrett-Cravens Company
General Office
3255 W. 30th Street
Chicago, Illinois
OFFICES IN FOLLOWING CITIES."

Then there is a statement of offices in sixty-seven named cities. including Brooklyn and New York.

Bebbington testified that room 1404 was an old room number and that room 737 was his present room number; that it was his own office, paid for by him, in which he conducted business of representing the defendant, another company and his own engineer-

ing practice. Nevertheless, the same telephone number — Barclay 7-7894 — is listed in both letterheads and card, and either Barrett-Cravens Agency or Barrett-Cravens Equipment is listed in the directory in the building.

He testified further that defendant had no mailing address or telephone listing in New York; that on January 1, 1936, he had been ordered to discontinue a telephone listing which had been maintained at his expense, and that he complied with that order some time in May or June, 1936.

This testimony, however, is contradicted by the following provisions of his contract, dated January 3, 1936:

" Be sure that you have a letter on file with your local postmaster, requesting him to send all mail addressed to Barrett-Cravens Company to you."

" *Telephone & Post Office Listings.* In the future we will, with your permission, contract for listing in the Classified Directory under ' Trucks-Lift.' Your address and telephone number will be used in connection with this listing. Do not list Barrett-Cravens Company in the alphabetical listing in your directory. List your name only. If you have your telephone under Barrett-Cravens Company, cancel it and list under your name. This is the contract you make with the telephone company for your telephone. *We will split the cost with you 50-50.*"

Upon all of the evidence the court is satisfied that the defendant was doing business within the State of New York in such a manner as to confer jurisdiction upon the courts of this State over it, and that John Bebbington, for the purpose of service of process, was a managing agent of the defendant at the time the summons in this action was served on him. (*Cochran Box & Mfg. Co., Inc.*, v. *Monroe Binder Board Co., supra; Tauza* v. *Susquehanna Coal Co., supra; Johnson* v. *Pacific Steel Boiler Corporation,* 132 Misc. 735; *Bersin* v. *Boath Junr. & Co., Ltd.,* 198 App. Div. 344, 345; *Heer & Co., Ltd.,* v. *Rose Bros. Co.,* 120 Misc. 723; 2 Carmody's New York Practice, § 644.)

The report of the official referee is, therefore, not adopted and the motion to set aside the service of the summons and complaint denied. Let the order to be submitted herein provide for giving the defendant time to appear and plead and to make such motion relative to the complaint as it may be advised.