DOBSON *v.* MAYTAG SALES CORP.

1. CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS.
   Whether or not a foreign corporation is doing business within this State and therefore amenable to process is a question of fact to be determined from the facts of each case rather than by the application of a general rule.

2. SAME—DOING BUSINESS—AMENABILITY TO PROCESS.
   While no exact test can be prescribed to determine whether a foreign corporation is doing business in a State, nevertheless

such corporation is amenable to process if it is doing business within the State in such a manner so as to warrant the inference that it is present there.

3. SAME—STATUTORY TESTS—AMENABILITY TO PROCESS.

Whether a foreign corporation is doing business in such a sense as to make it amenable to the jurisdiction of the courts of a State is not to be determined by tests applicable under statutes prescribing conditions under which it may be allowed to do business within the State, as activities insufficient to make out the transaction of business under such statutes may yet be sufficient to make the corporation amenable to process within the State.

4. SAME—PRESENCE AND ACTIVITY OF AGENT WITH AUTHORITY TO EXERCISE BUSINESS FUNCTIONS.

Whenever the agent of a foreign corporation, within the scope or apparent scope of his authority, is performing the business functions for the corporation, involving the exercise of discretion, such as the execution of contracts whereunder contractual relationships are by his efforts established between the corporation and others in the State, the marketing of products by advertising or solicitation, collecting accounts, and kindred functions, the corporation is "present" and "doing business" so as to be subject to the jurisdiction of the State courts.

5. SAME—DOING BUSINESS—AGENTS' ACTIVITIES—EVIDENCE.

Evidence showing that foreign corporation, manufacturer of washing machines, appointed a resident field representative, authorized to negotiate dealers' contracts and to promote sales, and appointed a resident of the State as its "regional manager and salesman, or in such other capacity as the manager of the corporation's branch office * * * may direct," together with the activities of such representatives which included the negotiation of a dealer's contract with plaintiff and assistance in demonstration and sale of washing machines, warranted inference that it was present in the State and doing business at time plaintiff's contract was entered into.

6. SAME—FOREIGN CORPORATION—DISSOLUTION—SUBSEQUENT CONTRACTS—ESTOPPEL.

By executing contracts after its dissolution, a foreign corporation is estopped to deny its corporate existence at the time of the execution of such contracts.

7. SAME—FOREIGN CORPORATION—AMENABILITY TO PROCESS—SERVICE UPON RESIDENT REGIONAL MANAGER.

    Foreign corporation *held,* amenable to process in suit by dealer by service upon its regional manager, a resident of this State, appointed by the corporation and authorized to act for it in certain capacities referred to in a written contract notwithstanding that subsequent to service such agent's contract was recalled and the name of another corporation inserted in lieu of defendant's name in such contract.

Appeal from Washtenaw; Sample (George W.), J. Submitted October 3, 1939. (Calendar No. 40,390.) Decided February 14, 1940.

Action by Russell T. Dobson, Jr., against Maytag Sales Corporation, a Delaware corporation, for damages for breach of an exclusive dealer contract. Defendant reviews denial of its motion to dismiss by appeal in the nature of certiorari. Affirmed.

*Burke & Burke,* for plaintiff.

*Roscoe O. Bonisteel,* for defendant.

McALLISTER, J. Plaintiff sued defendant, a foreign corporation, not authorized to do business in the State of Michigan, and caused service of summons to be made upon Harry Bush, as an agent of defendant in the county of Washtenaw. Defendant entered a special appearance and moved to dismiss and quash service, on the ground that the court had no jurisdiction for the reason that defendant at no time conducted any business in the State and that it was dissolved prior to the commencement of the suit. On hearing, the trial court denied the motion to dismiss, and defendant appeals.

"No all embracing rule as to what is 'doing business' has been laid down. The question is one of

fact, and it is to be determined largely according to the facts of each individual case rather than by the application of fixed, definite, and precise rules." 14a C. J. p. 1372.

See, also, *Watson-Higgins Milling Co.* v. *St. Paul Milling Co.*, 256 Mich. 258.

Whether defendant company was doing business in Michigan without authority depends upon the facts and circumstances peculiar to this case. It employed John H. Rhoades and designated him in its contracts as "field representative." He resided in Michigan. His work consisted in making sales of washing machines, promoting sales, and securing contracts with dealers in the State to handle products of defendant. He also negotiated and participated in the execution of the contract, on behalf of defendant company, by the terms of which plaintiff was authorized to become a dealer for the corporation. He helped plaintiff to get started as a dealer by procuring products manufactured by defendant from other authorized dealers in the State. Such products were shipped to plaintiff after Rhoades had come over to Pontiac and "made the deal for the washers." Plaintiff paid the Pontiac dealer for the machines. On other occasions Rhoades assisted plaintiff around his store, prepared an advertisement for plaintiff, to be inserted in newspapers, and helped him to sell and demonstrate the machines. All of the washers, with the exception of those abovementioned, were shipped by defendant from outside the State on bill of lading with sight draft attached. Rhoades apparently selected and placed agents for defendant in this State.

Bush, who was served with the summons as agent of the defendant, was employed on a contract in which he was named "regional manager, and salesman, or in such other capacity as the manager of the

corporation's branch office * * * may direct.'' He was paid by commission on the sales of washing machines and resided in this State.

While no exact test can be prescribed to determine whether a foreign corporation is doing business in a State, nevertheless such corporation is amenable to process if it is doing business within the State in such a manner as to warrant the inference that it is present there. See *Watson-Higgins Milling Co.* v. *St. Paul Milling Co., supra.*

While, as above stated, each case depends upon its peculiar facts in the determination of the question here involved, the further conclusion to be drawn from the cases is that whether a foreign corporation is doing business in such a sense as to make it amenable to the jurisdiction of the courts of the State is not to be determined by the tests applicable under statutes such as those prescribing the conditions under which a foreign corporation may be allowed to do business within the State. Activities insufficient to make out the transaction of business under such statutes may yet be sufficient to bring the corporation within the State so as to make it amenable to process. 14a C. J. p. 1372.

In *A. Harvey's Sons Manfg. Co.* v. *Sterling Materials Co.,* 247 Mich. 317, a foreign corporation, not admitted to do business within the State, sold goods to plaintiff through an agent working on commission only and taking orders subject to confirmation of defendant. The corporation did not maintain either an office or a warehouse in the State and kept no stock of goods within the State. Plaintiff complained of certain material purchased, and defendants sent its representative to assist plaintiff to dispose of the goods. Service of process was made upon such representative, and it was held that the activity of defendant and its agent was sufficient to constitute

doing business within the State, and that the service was good. In *Cheli* v. *Cudahy Bros. Co.*, 260 Mich. 496, where an employee of a foreign corporation, in addition to soliciting orders, performed services such as adjusting claims and filling orders by securing goods from other purchasers and keeping some goods of the company in stock at his home for immediate delivery, he was held to be such a representative of the company in this State that service upon him was service upon the company. In *Malooly* v. *York Heating & Ventilating Corporation*, 270 Mich. 240, the agent of a foreign corporation maintained a branch sales office at his own expense, caused the name of the corporation to be placed upon door and to be inserted in a local telephone directory, solicited orders for refrigerating equipment and supervised its installation as well as undertaking to remedy defects therein on consultation with his principal, the court held that service upon the agent was good as service upon the corporation. Where a foreign corporation was not authorized to do business in a State and employed a representative on commission with authority to fix dealers' discounts and use letterheads, giving the representative's office as the corporation's address, it was held that the corporation was "doing business" in the State. *Martin* v. *Barrett-Cravens Co.*, 164 Misc. 69 (298 N. Y. Supp. 101). And where a traveling salesman of a foreign corporation solicited and forwarded orders from retailers in the State, accepted and forwarded checks from customers, and promoted the establishment of new retail stores, and the corporation maintained a permanent display room in a local hotel, it was held that such corporation was doing business within the State in such a sense as to make it amenable to process. See *International Shoe Co.* v. *Lovejoy*, 219 Iowa, 204 (257 N. W. 576, 101

A. L. R. 122). Whenever the agent of a foreign corporation, within the scope or apparent scope of his authority, is performing the business functions for the corporation, involving the exercise of discretion, such as the execution of contracts whereunder contractual relationships are by his efforts established between the corporation and others in the State, the marketing of products by advertising or solicitation, collecting accounts, and kindred functions, the corporation is "present" and "doing business" so as to be subject to the jurisdiction of the State courts. *Wills* v. *National Mineral Co.,* 176 Okla. 193 (55 Pac. [2d] 449).

Because of its acts in the appointment of a resident field representative authorized to negotiate for dealers' contracts and to promote sales, and the appointment of a resident of the State, designated in a written contract with defendant "as regional manager and salesman, or in such other capacity as the manager of the corporation's branch office * * * may direct," together with the activities above-mentioned of such representatives, we are of the opinion that the defendant was doing business within the State in such a manner as to warrant the inference that it was here present, at the time of the transaction appointing plaintiff as its dealer.

It is claimed, however, that at the time service of summons was made upon Bush by plaintiff, the corporation was dissolved. Bush was employed under a contract with defendant company at the time that service was made. Two weeks thereafter the Maytag Company, another corporation, recalled Bush's contract, struck out the name, "Maytag Sales Corporation," and substituted the name, "Maytag Company." Defendant claimed that the agreement with Bush had been erroneously drawn with the Maytag Sales Corporation as contracting party, instead of

with the Maytag Company; and that defendant company had been dissolved in 1936 and was no longer in existence. It is not contended that the contract in question was executed by anyone other than the defendant corporation.

In *Hammond* v. *National Life Association,* 58 App. Div. 453 (69 N. Y. Supp. 585), it was held that the judgment of a foreign State to dissolve any corporation domiciled there would not at once operate to dissolve the corporation so far as the jurisdiction of the court of another State is concerned; but until the judgment of dissolution had been brought to the attention of the courts of such State and steps taken to enforce it there, the status of the corporation was not changed therein, nor were the remedies of creditors there taken away.

However, we are of the opinion that, by executing contracts after its dissolution, defendant is estopped to deny its corporate existence at the time of the execution of such contracts. A holding in some degree similar in principle to our conclusion is evident in *Chadwick* v. *Dicke Tool Co.,* 186 Ill. App. 376, where a corporation was sued on a promissory note and interposed the defense that its corporate existence had expired by limitation before the note was given, and that, therefore, such obligation was void. It was held that the corporation, in assuming to act as such in giving the note, was estopped from denying its corporate existence. See, also, *Empire Manufacturing Co.* v. *Stuart,* 46 Mich. 482; *Meurer* v. *Detroit Musicians Benevolent & Protective Ass'n,* 95 Mich. 451; *City of Niles* v. *Railway Co.,* 154 Mich. 378.

It is, therefore, our determination that the defendant was doing business in this State at the time it entered into the contract in question with plaintiff, in the sense that it was amenable to process, that

Bush was its authorized agent, and that service of summons in this case was valid.

The order of the trial court denying defendant's motion to dismiss is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.