**Frank MAHANNA, Plaintiff,**

v.

**Constance FRANCONERO and Curtis Publishing Company, a foreign corporation, Defendants.**

**No. 23667.**

United States District Court
E. D. Michigan, S. D.

Sept. 30, 1963.

John R. Starrs, Wurzer, Higgins & Starrs, Detroit, Mich., for plaintiff.

Rockwell T. Gust, James D. Ritchie, Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., for defendants.

FREEMAN, District Judge.

This diversity case involves a tort libel action arising out of articles published by the defendant, Curtis Publishing Company, in its September 23, 1961, and November 4, 1961, issues of the Saturday Evening Post, which were distributed throughout the country, including Michigan. The case was filed by plaintiff in the Wayne County, Michigan, Circuit Court on March 5, 1963, and was subsequently removed to this Court by both defendants. The matter is now before the Court on the motion of defendant Curtis to dismiss as to such defendant on the ground that the claim alleged in the complaint is barred as to the defendant Curtis by the applicable statute of limitations.

The period of limitations for tort libel actions under applicable Michigan law is one year. C. L. '48, § 609.13, M.S.A. § 27.605. Defendant Curtis contends that it was amenable to service of process in Michigan at all times since the publication of the alleged defamatory articles, and it is agreed that the action must be dismissed as to defendant Curtis if it was amenable to service of process in Michigan for the required one year period before this suit was filed.

Affidavits filed in support of this motion to dismiss show the following activities on the part of the defendant Curtis in Michigan. For many years, defendant Curtis has maintained an office in Detroit, Michigan, which office has been located on the 18th floor of the Fisher Building in Detroit continuously since February, 1946. A telephone listing for the office has appeared in the Detroit,

Michigan, alphabetical telephone directory at all times under the name of Curtis Publishing Company. At the time of publication and distribution of the September 23, 1961, issue of the Saturday Evening Post, and at all times subsequent thereto, the office has been in charge of a Vice-President of defendant Curtis who, in turn, has supervised the work of the office staff which, during all of such period, has consisted of a minimum of twenty-two full time employees of defendant Curtis. Included in the staff of such employees are salesmen who call on advertising agencies in and around the metropolitan Detroit area. The function of the said office is to sell advertising space in the various Curtis magazines, including the Saturday Evening Post. Orders for advertising space are submitted to the Detroit office and the personnel of such office review the orders with respect to their terms and applicable rates and investigate the credit of the advertiser or advertising agency. The Detroit office acknowledges receipt of the orders, enters them on its books and forwards them to the Curtis office in Philadelphia, where the printing plant is located. The volume of orders obtained by the Detroit office for the last few years has been approximately $14,000,000 per year. The Detroit office is advised by the home office as to delinquent accounts and Detroit office personnel contact advertisers and advertising agencies with respect to payment of the overdue accounts. The Vice-Presidents in charge of the Detroit office since the time of the alleged libelous publications were vested with authority to execute contracts and have executed contracts with advertisers; and the Vice-President currently in charge of such office is negotiating with and intends to execute a new lease for the space occupied by said office. The officer in charge of the Detroit office has authority to and does extend credit to certain advertisers and agencies beyond the terms normally granted. Sales brochures and other sales presentation material including market studies, statistical charts and art work are prepared by the Detroit office, and the Detroit office arranges and pays for the printing of such brochures and materials. A bank account is maintained by the Detroit office of defendant Curtis in a Detroit bank. The average balance of said account has been approximately $20,000, which account is used for payment of the telephone bills, office supplies, cost of printing of sales presentation materials and art work and travel and entertainment expenses of said office. The total of such payments for the twelve months ending July 31, 1963, was in excess of $110,000. At the time of publication and distribution of the September 23, 1961, issue of the Saturday Evening Post, and at all times subsequent thereto, to and including the time of the filing of the complaint in this action, subscription copies of issues of the Saturday Evening Post and subscription copies of issues of other magazines published by defendant Curtis destined for subscribers residing in Michigan were shipped by defendant Curtis from its Philadelphia area printing plants by railroad to Detroit, Michigan, and were delivered by a contract carrier to the Detroit postoffice where they were mailed. National distribution of single (newsstand) copies of all issues of all magazines published by defendant Curtis was made by Curtis Circulation Company, a wholly-owned subsidiary of defendant Curtis.

The plaintiff has submitted no proof by affidavit or otherwise.

Presumably, defendant Curtis is not licensed to do business in Michigan. The statement in plaintiff's brief—"there was concession at pre-trial that Curtis has not been admitted to do business in Michigan"—is not challenged. However as pointed out in Dobson v. Maytag Sales Corp., 292 Mich. 107, 111, 290 N.W. 346, 347:

"* * * whether a foreign corporation is doing business, in such a sense as to make it amenable to the jurisdiction of the courts of the state is not to be determined by the tests applicable under statutes such as those prescribing the conditions un-

der which a foreign corporation may be allowed to do business within the state. Activities insufficient to make out the transaction of business under such statutes may yet be sufficient to bring the corporation within the state so as to make it amenable to process. 14a C.J. 1372."

The Michigan statute with respect to service of process on a foreign corporation in effect at the time of the alleged libelous publication and for more than one year thereafter provided:

"In all cases where suit is brought against a foreign corporation, process may be served upon any officer or agent of such corporation within this state, and any person representing such corporation in any capacity, shall be deemed an agent within the meaning of this section." C. L. '48, § 613.31, M.S.A. § 27.761.

█ The reported decisions construing the Michigan statute M.S.A. § 27.761 indicate that a foreign corporation will be amenable to service in this State if it is doing business within the State in such a manner as to warrant the inference that it is present there. Dobson v. Maytag Sales Corp., supra; Watson-Higgins Milling Co. v. St. Paul Milling Co., 256 Mich. 258, 239 N.W. 295; Dolce v. Atchison, Topeka & Santa Fe R. Co., D.C., 23 F.R.D. 240.

█ In diversity cases, the question of whether a foreign corporation is present in a state so as to render it subject to suit in that state is to be determined by the law of the state in which the Federal District Court sits. Smartt, et al. v. Coca-Cola Bottling Corp. (C.A.6), 318 F.2d 447; Pulson v. American Rolling Mill Co. (C.A.1), 170 F.2d 193; Dolce v. Atchison, Topeka & Santa Fe R. Co., supra.

In a pertinent case, Harvey's Sons Mfg. Co. v. Sterling Materials Co., 247 Mich. 317, at p. 319, 225 N.W. 538, the Michigan Supreme Court stated:

"In these cases under such decisions two questions ordinarily arise: First, was the process served upon an authorized agent of the corporation, which question has been answered, and, second, whether the corporation was doing business within the state. Philadelphia & Reading Railway Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710."

A vice-president of the defendant Curtis was in charge of its Detroit office at all times during the one-year period in question and it is, therefore, clear that defendant Curtis did have the required statutory agent or representative in Michigan who could have been served during all of such time.

█ It is true, as plaintiff contends, that the mere solicitation of business by a foreign corporation was insufficient under Michigan law, prior to the Revised Judicature Act effective January 1, 1963, Pub.Acts 1961, No. 236, to subject the corporation to service of process in Michigan, since mere solicitation did not amount to doing business in Michigan. Hellman v. Ladd, 315 Mich. 150, 23 N.W. 2d 244; Watson-Higgins Milling Co. v. St. Paul Milling Co., supra; Hershel Radio Co. v. Pennsylvania R. Co., 334 Mich. 148, 54 N.W.2d 286. However, very little activity in addition to solicitation of business is required to subject a foreign corporation to service of process in Michigan. Dobson v. Maytag Sales Corp., supra; Malooly v. York Heating & Ventilating Corp., 270 Mich. 240, 258 N.W. 622; Berk v. Gordon Johnson Co., D.C., 212 F.Supp. 365.

The affidavits filed in support of the motion clearly indicate that the defendant Curtis was engaged in a regular, continuous course of business activity in Michigan as a substantial part of its business of publishing magazines. In addition to the large volume of advertising solicited and sold by the Detroit office in the amount of approximately $14,-000,000 per year, the staff investigated customers' credit, checked on overdue accounts, executed contracts with advertisers, extended credit to advertisers beyond the normal terms, prepared brochures and other sales material including market studies, statistical charts and

art work, and paid for printing same, and maintained a bank account in a Detroit bank, which was used for payment of telephone bills, office supplies, sales material, travel and entertainment expenses of the office, which payments exceeded $110,000 for the year ending July 31, 1963.

In Berk v. Gordon Johnson Company, supra, 212 F.Supp. 365, this Court said:

"State law governs the question of whether a foreign corporation is subject to its in personam jurisdiction provided such state law is within federal Constitutional requirements, which requirements involve a question to be determined by federal law.

\* \* \* \* \* \*

"Any resolution of the due process problem begins with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In assaying the question of state court jurisdiction over foreign corporations, that case put to rest the 'consent' and 'presence' theories of jurisdiction formerly in vogue and adopted as a standard whether the foreign corporation had such 'minimum contacts' with the forum that the maintenance of the action would not offend 'traditional notions of fair play and substantial justice.' Id., [326 U.S.] 316, 66 S.Ct. 158; see also Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co. (C.A. 1), 304 F.2d 915.

"The Court, 326 U.S. at p. 319, 66 S.Ct. at p. 160, of its opinion in International Shoe aptly states the policy reason behind its decision:

" 'But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.'

"In other words, a state may exercise in personam jurisdiction over a foreign corporation where the cause of action arises out of an act done or transaction consummated in the forum state or where the defendant's activities have substantial connection with the state in that the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Co. v. Washington, supra, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95."

In Consolidated Cosmetics v. D-A Pub. Co., Inc. (C.A.7), 186 F.2d 906, p. 908, the Court stated:

"The functions of a magazine publishing company, obviously, include gathering material to be printed, obtaining advertisers and subscribers, printing, selling and delivering the magazines for sale. Each of these, we think, constitutes an essential factor of the magazine publication business. Consequently if a non-resident corporation sees fit to perform any one of those essential functions in a given jurisdiction, it necessarily follows that it is conducting its activities in such a manner as to be subject to jurisdiction."

█ The activities of defendant Curtis in Michigan were substantial and, as stated in its brief, were "not mere solicitation but rather the continuous and systematic conduct of an essential part of defendant's business." Furthermore, plaintiff's cause of action is based on his claim that defendant Curtis circulated its magazine in Michigan, which gave rise to the cause of action in Michigan.

In Hoffa v. National Broadcasting Company, 213 F.Supp. 895, Chief Judge Levin of this Court held that the defendant foreign corporation was amenable to service of process in Michigan in a libel and slander action where it solicited advertising in Michigan and regularly and systematically sent program material to radio and television stations via common carrier communications facilities.

Plaintiff also argues that even if the defendant Curtis was doing business in Michigan, the cause of action must arise out of the business being conducted within the State of Michigan in order to make said defendant amenable to suit in that State. Plaintiff's argument is not supported by the cases cited in support of this contention.

In Renfroe v. Nichols Wire & Aluminum Co., 348 Mich. 425, 83 N.W.2d 590, the issue was not whether the defendant was subject to service of process, but whether venue was proper under the Michigan statute, M.S.A. § 27.641. That case held only that a foreign corporation admitted to do and doing business in Michigan was not a resident of Michigan for the purpose of venue.

Hershel Radio Co. v. Pennsylvania R. Co., supra, 334 Mich. 148, 54 N.W.2d 286, also relied upon by plaintiff, is also irrelevant for the reason that service of process on the defendant corporation was held invalid because the corporation was not doing business within the State and not because the cause of action did not arise out of its activities in Michigan.

■ This Court concludes that defendant Curtis was subject to service of process in Michigan from the time of the alleged libelous publication, and that a suit against such defendant in Michigan would have met due process requirements. Therefore, plaintiff's action against defendant, Curtis Publishing Company, is barred by the Michigan one-year statute of limitations, and the motion to dismiss as to such defendant must be granted.

An appropriate order may be presented.