**GOLDSTEIN et al. v. CHICAGO, R. I. & P. R. CO.**

**GOLDSTEIN v. CHICAGO, R. I. & P. R. CO.**

Civ. A. Nos. 4650, 4651.

United States District Court
W. D. New York.

Oct. 10, 1950.

672

Julius H. Michaels, Rochester, N. Y., for plaintiffs.

Brown, Kelly, Turner & Symons, Buffalo, N. Y. (Franklin R. Brown, Buffalo, N. Y., of counsel), for defendant.

KNIGHT, Chief Judge.

Each of the two actions above noted involve the same questions of law, and they will be considered together.

This is a motion by the defendant for dismissal of the action upon the ground that the service was ineffective to secure jurisdiction of said defendant, and that the court lacks jurisdiction of defendant; that the service of the summons and complaint was not made on a person authorized either by law or otherwise to receive such process in behalf of defendant.

This is an action in negligence, brought to recover damages alleged to have arisen from injuries sustained by plaintiffs resulting from a train derailment occurring on the line of defendant near Meade, Kansas, on October 10, 1949. The plaintiffs are residents of this Western District of New York. Service of the summons and complaint was made on July 31, 1950, on one Frank Zadach, claimed by plaintiffs to be "the General Passenger Agent" for defendant.

The defendant is a corporation, organized and existing under the laws of the

State of Delaware, not authorized to do business in this state, engaged in business of operating lines in interstate commerce wholly without the State of New York.

This action is based only on diversity of citizenship.

28 U.S.C.A. § 1391 provides in part:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.

\*  \*  \*  \*  \*  \*

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The first inquiry is whether it is "doing business" in this judicial district within the meaning of 28 U.S.C.A. § 1391, supra. It has three employees in this district, one of whom solicits passenger business, another freight business, and the third is a stenographer. The duties of the solicitors as described by the defendant are to "\*  \* have passenger and freight traffic move and be transported over the railroad lines of said railroad (which lines are wholly without the State of New York); to merely turn over prospective movements of passengers and freight to some other railroad \* \* \*; to merely keep advised of the movement of such traffic by such other railroads and to endeavor to have such traffic routed so that ultimately such passengers or freight will be transported over the lines of the defendant \* \* \*."

Defendant has no bank account in the district. Salaries of these employees, as well as rent, are paid by check from the main office of defendant. These solicitors do not sell passenger tickets, issue bills of lading, make contracts for carriage, make any collections or handle any claims.

The question of what constitutes "doing business" in a state has been the subject of judicial consideration in almost a myriad of cases.

Green v. Chicago, Burlington & Quincy Railway Co., 205 U.S. 530–533, 27 S.Ct. 595, 596, 51 L.Ed. 916, is a case directly in point and has been for many years the leading case on the question of whether soliciting business, as here, constitutes "doing business" by a foreign corporation in a district where action has been brought against a foreign corporation. As will be seen certain later decisions of the courts have shown a somewhat more liberal interpretation of the expression "doing business". These cases have generally described the facts as showing "solicitation plus" or "slight additions" to solicitation.

It was said in the Green case: "The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business several clerks and various traveling passenger and freight agents were employed, who reported to the agent and acted under his direction. He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the Chicago, Burlington and Quincy Railroad a ticket over that road."

The instant case shows stronger support for a finding that defendant was not "doing business" in New York State than does the Green case, supra. This is definitely shown by the above quoted part of the opinion there.

In Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 269, 37 S.Ct. 280, 281, 61 L.Ed. 710, it appeared that no part of that railroad was situate in the State of New York. The railroad had no dock or freight or passenger ticket office or any other office or any agent or property therein. It sent into New York over connecting carriers loaded freight cars, and carriage was performed wholly by connecting carriers therein. This carrier was the

Central Railroad of New Jersey which had a ferry in New York. It issued tickets over its own and connecting lines, including the plaintiff. Plaintiff had no office or employee at the terminal. This seems even a much weaker case in which there was denial of jurisdiction than the one at bar. The significance of the decision is found in certain language of opinion by Judge Brandeis. He said: "The defendant transacts no business there; nor is any business transacted there on its behalf, except in the sale of coupon tickets. Obviously the sale by a local carrier of through tickets does not involve a doing of business within the state by each of the connecting carriers. If it did, nearly every railroad company in the country would be 'doing business' in every state. Even hiring an office, the employment by a foreign railroad of a 'district freight and passenger agent * * * to solicit and procure passengers and freight to be transported over the defendant's line,' and having under his direction 'several clerks and various traveling passenger and freight agents,' was held not to constitute 'doing business within the state.' Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916."

In People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 235, 62 L.Ed 587, the plaintiff brought action against defendant in the Eastern District of Louisiana. The defendant was organized under the laws of New Jersey. It was selling goods in Louisiana and sending drummers into the state to solicit orders of retail trade to be turned over to jobbers, charges being made by jobbers to retailers. It also appeared defendant owned stock in companies carrying on tobacco business in Louisiana. The Supreme Court sustained the decision of the District Court, in maintaining the exception filed by defendant company as to the question of the defendant doing business in Louisiana and also as to insufficiency of service of process. It said: "The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

It was held that defendant was not "doing business" in the state of Louisiana.

In Davis v. Farmers Co-Op Equity Co., 262 U.S. 312, 43 S.Ct. 556, 557, 67 L.Ed. 996, the question considered was the constitutionality of a Minnesota statute relating to the service of a summons on an agent of a foreign corporation. Not that the subject matter of the suit has any bearing here, but certain language in the opinion by Judge Brandeis is significant. "Solicitation of traffic by railroads, in states remote from their lines, is a recognized part of the business of interstate transportation. McCall v. People of State of California, 136 U.S. 104, 10 S.Ct. 881, 34 L.Ed. 391. As construed by the highest court of Minnesota, this statute compels every foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state. Jurisdiction is not limited to suits arising out of business transacted within Minnesota." In invalidating the statute, the court in part said: "It is asserted, whatever the nature of the cause of action, wherever it may have arisen, and although the plaintiff is not, and never has been, a resident of the state. * * * This condition imposes upon interstate commerce a serious and unreasonable burden, which renders the statute obnoxious to the commerce clause. * * * That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in states and jurisdictions remote from that in which the cause of action

arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers—these are matters of common knowledge."

In Cancelmo v. Seaboard Air Line Ry., 56 App.D.C. 225, 12 F.2d 166, 169, the only business of the defendant in the District of Columbia was solicitation of traffic and employment of a general counsel. There it was said: "A railroad company which has no tracks within a district is not doing business therein, in the sense that liability for service is incurred because it hires an office and employs an agent for the merely incidental business of solicitation of freight and passenger traffic. Green v. C. B. & Q. Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916."

Hutchinson v. Chase & Gilbert, 2 Cir., 1930, 45 F.2d 139, 141, decided in this Circuit, Judge Hand wrote the opinion. Defendant's business was an "engineering manager" of public utility corporations which it supervised and in which it owned a controlling interest, directly or indirectly. Only one of these is a New York corporation, and defendant leases an office in New York City, keeps a small bank account there and employs a stenographer. The facilities were used only on occasional visits. No contracts were closed there. Its name appeared in the telephone book and on the door. Bonds of a subsidiary were offered for sale in New York, but generally its business was conducted in Boston where all its directors and officers reside. The court said: "Possibly the maintenance of a regular agency for the solicitation of business will serve without more. The answer made in Green v. C., B. & Q. R. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, * * * perhaps becomes somewhat doubtful in the light of International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and, if it still remains true, it readily yields to slight additions. * * * Purchases, though carried on regularly, are not enough. * * * The maintenance of an office, though always a make-weight, and

enough, when accompanied by continuous negotiation, to settle claims * * *, is not of much significance * * *. It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass."

The court sustained the finding that the court did not have jurisdiction. See also: Davega, Inc. v. Lincoln Furniture Mfg. Co., Inc., 2 Cir., 29 F.2d 164.

In Condon-Cunningham Co. v. Caterpillar Tractor Co., D.C., 64 F.Supp. 921, 922, the sole business of the agent of defendant was solicitation of business. The court referring to Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, said: "In the opinion the principle is recognized that activity on the part of an agent in the nature of 'mere solicitation' of business within the borders of the foreign sovereignty may not be a basis for acquiring jurisdiction of a foreign corporation."

In Webber v. Pan American Airways, D.C., 85 F.Supp. 959, 960, defendant was organized under the laws of the State of New York. It was not authorized to do business in the State of Minnesota. It did not operate any airlines in and over the State of Minnesota. The only activity conducted in Minnesota was the solicitation of foreign traffic over its airlines entirely without the State of Minnesota. The court said: "There is an unbroken line of authorities which hold that mere solicitation of business by a foreign corporation is not doing business within the State so as to warrant a holding that the defendant is present there for the purpose of service of process."

In Fletcher CYC Corps. (Permanent Ed.) Vol. 18, Chap. 67, sec. 8718, the statement is made that: "It has long been well settled that the mere solicitation of business and the mere presence in the state of a mere soliciting agent of a foreign corporation without more, will not suffice to bring the corporation within the term of 'doing business' and make it present in the state so as to subject it to a suit in the process of the state courts; in order to render a foreign corporation amenable to the serv-

ice of process within a state, the business done by it in the state must be more than mere solicitation. * * *."

13 Words and Phrases, Perm. Ed., "Doing Business", p. 128 et seq. cites numerous cases to the effect that mere solicitation is not sufficient to confer jurisdiction.

See also: Sowl v. Union Pac. R. Co., D.C., 72 F. Supp. 542, 543. The court held that "The maintenance of an office for the mere purpose of soliciting business under circumstances existing in the present case, where the defendant has no lines of transportation in Minnesota and does not receive or deliver freight or passengers therein, precludes a finding that defendant was present within the State of Minnesota so as to permit the service of process here attempted to be made by plaintiff." Jablonski v. Southern Pac. Co., D.C., 76 F. Supp. 1022. See also: Cozzi v. Chicago, Rock Island & Pacific RR. (defendant here) [1] decided Sept. 29, 1950, Mr. Justice Botein, Supreme Court of N.Y.

Many New York State cases are in harmony with the decisions above given.

None of these cases seem to extend the rule as laid down in Green v. C., B. & Q. R. Co., supra.

In Yeckes-Eichenbaum, Inc. v. McCarthy, 290 N.Y. 437, 49 N.E.2d 517, defendant maintained a fiscal office in New York City for the purpose of maintaining its corporate existence, the presence of its records and the registration and transfer of its stocks and bonds. This was at Wall Street, but it also had an office at 500 Fifth Avenue where employees were engaged solely in solicitation of freight and passenger business. That office handled no cash, sold no tickets and issued no bills of lading. It was held that defendant was not "doing business" in New York such as to make it amenable to service of process there.

In Dineen v. United Airlines Transport Corp., 166 Misc. 422, 2 N.Y.S.2d 567, 568, the employees of defendant were authorized to solicit business and sell tickets and arrange for the transportation of passengers to the airport through unaffiliated corporations. Its airplanes did not traverse the State of New York. The court said: "The question presented is, whether the defendant is doing sufficient business here to give this court jurisdiction. * * Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915. This is probably the leading case in this state on the question. In order to give jurisdiction the court held it was not enough to solicit orders in New York, but that it was also necessary that the goods be actually shipped into the state and delivered here. The court sees no difference between the present case and Green v. Chicago, Burlington & Quincy R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916."

In Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, the defendant had a branch office in New York, which was in charge of a sales agent and under him were 8 salesmen, who were subject to his orders. There were other employees. All sales were subject to confirmation by the home office in Philadelphia. It was held in order to give jurisdiction it was necessary that goods be actually shipped into the state and delivered there. As in the Dineen case, the court saw no difference between it and Green v. Chicago, B. & Q., supra. The Opinion in the latter case states that the agent sold no tickets within the state and received no payments for transportation of freight. See also: Worthy v. Louisville & N. R. Co., Sup., 79 N.Y.S.2d 588; Cohen v. Gulf, Mobile & Ohio R. Co., Sup., 95 N.Y.S.2d 633.

A uniformity of the decisions, to recent time at least, establish the rule that the mere solicitation *as shown in this case* is not enough to show that the defendant is doing business in this state. However, it appears that this rule has been modified or changed to some respect.

Frene v. Louisville Cement Co., 77 U.S. App.D.C. 129, 134 F.2d 511, 514, was a case in which defendant company, a Kentucky corporation, employed solicitors in the District of Columbia. The agent living in the District of Columbia had

---

[1]. Motion to vacate granted.

authority to solicit orders for defendant's products in practically all of Maryland, but he had no authority to conclude or make binding sales. He forwarded orders to the home office. Shipments were made directly to dealers who supplied them to contractors or other consumers. The agent visited jobs in course of construction, noted manner of installation, made suggestions on difficulties, went over complaints with regard to materials and reported them to home office. In connection with his work he took specimens for testing purposes, inspected work as it progressed, examined plans and specifications for buildings. This work was regularly performed in the course of construction. This company made what is known as Brixment. The agent gave particular attention to the use of this material and to its mixture. It is clear that the activities of this agent were more than mere solicitation. The court in part said: "The tradition has grown that personal jurisdiction of a foreign corporation cannot be acquired when the only basis is 'mere solicitation' of business within the borders of the forum's sovereignty. And this is true, whether the solicitation is only casual or occasional or is regular, continuous and long continued. * * * In other words, the fundamental principle underlying the 'doing business' concept seems to be the maintenance within the jurisdiction of a regular, continuous course of business activities, whether or not this includes the final stage of contracting. Consequently it is not clear that if, in addition to a regular course of solicitation, other business activities are carried on, such as maintaining a warehouse, making deliveries, etc., the corporation is 'present' for jurisdictional purposes. And very little more than 'mere solicitation' is required to bring about this result."

The concurring opinion by Judge Edgerton seeks to distinguish it from Green, supra. Plaintiff-appellant in the Frene case relies principally upon Toledo Computing Scale Co. v. Miller, 38 App.D.C. 237; Carroll Electric Co. v. Freed-Eisemann Radio Corp., 60 App.D.C. 228, 50 F.2d 993; Hoffman v. Washington-Virginia Ry. Co., 44 App.D.C. 418. We see upon examination that these are distinguishable from the one at bar.

Reliance in the instant case is also based upon International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 946, 58 L.Ed. 1479, decided 1914. In this case the question of sufficiency of service of process on an agent of defendant in criminal proceeding in Kentucky is raised. The court said: "Upon this question the case is a close one, * * *. As we have said, we think it was. Here was a continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there * * *."

International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, at least gives some support for the conception that mere solicitation does not give jurisdiction. This question arose over the question of whether the activities within a state of salesman in employ of foreign corporation exhibiting merchandise and soliciting orders were of such systematic and continuous character that rendered plaintiff amenable to service in Washington. The change was brought under a statute purporting to render the shoe company amenable to proceedings to recover state unemployment compensation provided by the Act, and questions there were whether the activities render defendant amenable under the due process clause of the Fourteenth Amendment. The shoe company was a Delaware Corporation maintaining an office at St. Louis; had no office in Washington; no stock of merchandise there. For several years it em-

ployed 11 to 13 salesmen, under direct supervision and control of sales managers located in St. Louis, who lived in Washington and confined their work to that city. Their compensation was by commissions based upon the amount of sales. The salesmen were provided with a line of samples and rented sample rooms, paid for by International. Authority was limited to exhibiting samples, and soliciting orders which were transmitted to the office in St. Louis, and when accepted, merchandise was sent f. o. b. to Washington. No salesmen were authorized to enter into any contract or make collections. The Supreme Court upheld the Superior Court of Washington in holding that the regular and systematic solicitation of orders in the state by appellant's salesmen, resulting in continuous flow of appellant's product into the state, was sufficient to constitute doing business in the state so as to make appellant amenable to suit in its courts. But it was also of opinion that there were sufficient additional activities shown to bring the case within the rule frequently stated that solicitation within a state by the agents of a foreign corporation plus some additional activities there are sufficient to render the corporation amenable to suit brought in the courts of the state to enforce an obligation arising out of its activities there. Citing International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511.

The court in International Shoe Co., supra, seems to adopt the reasons of the Supreme Court of Washington on which it found that these additional activities of the salesmen were sufficient superimposed upon solicitation to give state jurisdiction. Said the court: "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. * * * Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. * * * The activities which establish its 'presence' subject it alike to taxation by the state and to suit to recover the tax." [326 U.S. 310, 66 S.Ct. 160.]

This statement hardly applies to the activities or result of activities of the salesmen of defendant.

The distinction between the Frene case and the Harvester case and the one at bar is clear. This, also, is shown in People's Tobacco Co. v. American Tobacco Co., supra. The opinion there says: "* * * in that case (Harvester) the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the State of Kentucky in such manner as to make the Harvester Company amenable to process of the courts of that State." [246 U.S. 79, 38 S.Ct. 235.]

In United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 861, 92 L.Ed. 1091, Section 12 of the Clayton Act, 15 U.S.C.A. § 22, was construed. Such section provides that venue may be had "not only in the judicial district whereof it (defendant) is an inhabitant, but also in any district wherein it may be found or transacts business". The court on appeal said: "In other words, for venue purposes, the Court (lower) sloughed off the highly

technical distinctions theretofore glossed upon 'found' for filling that term with particularized meaning, or emptying it, under the translation of 'carrying on business.' In their stead it substituted the practical and broader business conception of engaging in any substantial business operations." Citing Frene and International Shoe Company cases, supra. Further the court said: "Refinements such as previously were made under the 'mere solicitation' 'and solicitation plus' criteria, cf. Frene v. Louisville Cement Co., supra, and like those drawn, e. g., between the People's Tobacco and International Harvester cases, supra, were no longer determinative. The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue." I take this means that whether the foreign corporation is "doing business" in the district is to be decided on the particular facts and not on the conclusion that it is either "mere solicitation" or "solicitation plus."

In referring to the International Shoe Company case and the United States v. Scophony Corporation case, supra, the court in Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 684, said: "These cases do indicate a definite disposition to broaden the concept of 'engaging in business' to include mere solicitation, if it is sufficiently continuous to amount to a course of business. * * * It may be that the more realistic philosophy of the later cases will eventually lead to the recognition of these acts (as shown in the Steinway case) as legally sufficient to sustain asserted jurisdiction over the non-resident corporation." Jurisdiction was claimed because defendant voted certain stock in the district of the residence of plaintiff. Many of the leading cases on the question of jurisdiction are cited. The court held that it did not have jurisdiction.

In Lasky v. Norfolk & Western Ry. Co., 6 Cir., 157 F.2d 674, 675, defendant had an office for the solicitation of freight and passenger business in the district wherein the suit was brought, and in which district plaintiff resided. It seems that the action was brought in the Southern District of Ohio, that defendant was doing business in the Northern District and was served with process in the Northern District. The facts are comparable to those in Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185. Both involved the service of process in a district in the state in which defendant was doing business and the action was brought in another district in the same state. In view of that fact and in view of Rule 4(f), Fed. Rules Civ. Proc. 28 U.S.C.A., and the fact that defendant had an agent designated to receive service in the Mississippi, service held to be sufficient. The court on appeal said, in part: "We have reached the conclusion that recent opinions of the Supreme Court clearly indicate that the judgment of the district was erroneous". Citing International Shoe Co., supra. This decision was based on the opinion in the International Shoe case.

In Bach v. Friden Calculating Mach. Co., 6 Cir., 167 F.2d 679, 681, it was said in part: "It was not to be doubted that the opinion of the Supreme Court in the International Shoe Company case manifested a broadened viewpoint toward the right of citizens to sue a non-resident corporation by service of process upon its representatives, whose activities formerly frequently were considered not to constitute 'doing business' by the corporation or to render it 'present' for jurisdictional purposes within the state of the forum."

This opinion points out its harmony with International Shoe case and said: "Our function in a case of this character is to examine carefully the specific facts of record so as to determine whether the aggregate of its intra-state transactions require the non-resident corporation, in conformity with the true intent of the International Shoe Company opinion, to respond to an action brought against it in the local jurisdiction." See also: Minnesota Mining Co. v. International Plastic Corp., 7 Cir., 159 F.2d 554; Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33.

■ During nearly one-half century the Supreme Court in several cases, as heretofore noted, held that the activities such as shown in the instant case were not "doing business" such as would give jurisdiction in the instant case. Many other court decisions are to the same effect. ·It is believed that practically all of the recent cases commencing with Harvester and International Shoe cases, supra, are distinguishable in certain respects with the one at bar. The distinction to be sure is slight in certain of these cases. It is believed that facts here are sufficient to support the claim of lack of jurisdiction, tho it must be admitted that the question here is a close one.

■ However, there is another factor to be considered in deciding the question of jurisdiction. In Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, 185, the lower court vacated the service of a summons and dismissed the complaint. The plaintiff was a citizen of Georgia; the defendant a Brazilian corporation. The appellate court reversed and said: "In Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139 * * *. We said that a corporation, like any other concerted enterprise, when considered as jurally separate from the individuals who compose it, can be attributed location outside the state of its incorporation only by virtue of local activities of its agents which realize its purposes. We also said that 'presence' demands more than that the local activities shall be continuous and not sporadic; it includes as a second factor an 'estimate of the inconveniences which would result from requiring' the corporation 'to defend, where it has been sued.'" Quoting from the opinion in International Shoe Company, supra, the court in this Latimer case said: "This language meant that constitutionally it was not enough to hold a corporation that it did some continuous business within the the state of the forum; the injustice might be too great, if it were compelled to stand trial there merely on that account, and regardless of all attending 'inconveniences.' This was what we have called the second

factor in 'presence,' and in Kilpatrick v. Texas & Pacific Ry. Co., 2 Cir., 166 F.2d 788, we said that the issues involved in this second factor, so far as we could see, were indistinguishable from those which determined a plea, forum non conveniens."

Referring to the International Shoe Co., Gulf Oil Corp. v. Gilbert, 330 U.S. 501; 67 S.Ct. 839, 91 L.Ed. 1055, and Koster v. Lumbermens Mutual Ins. Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067, the court continuing said they held "that the plea, forum non conveniens, was always open to a defendant in a case depending upon diverse citizenship, even in cases where the personal jurisdiction was unquestioned. * *" Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788, was decided by the same court sitting in the Latimer case, supra. Referring to prior decisions of the courts holding that where a railroad "did business" in any jurisdiction, Section 6 of the Employers' Liability Act, 45 U.S.C.A. § 56, subjected it to personal service regardless of the inconvenience or expense of a party. Judge Hand in the Kilpatrick case said: "Nevertheless, there remained the question of what constituted 'doing business' under § 6, and, in particular, whether the same factors determined it as determined a corporation's 'presence' in actions where no statute expressly prescribed the venue. So far as we have been able to find, the only courts which have passed upon that question, have assumed that the two phrases had the same meaning. We cannot agree, for in 1945 the Supreme Court so restated the whole doctrine of corporate 'presence' as to make it no longer possible to hold it identical with 'doing business' under § 6." [166 F.2d.790.] Citing International Shoe Co. v. Washington; Green v. Chicago, Burlington & Quincy Ry. Co. "The Court did not overrule that decision;" but it held that in order to determine that question "the court must balance the conflicting interests involved: i.e., whether the gain to the plaintiff in retaining the action where it was, outweighed the burden imposed upon the defendant; or vice versa."

■ In the case at bar the defendant shows by an affidavit that the defendant

will be required to bring 28 witnesses from Kansas for a trial in this District. The plaintiff asserts that some of such proposed witnesses would not be needed or could not be used, but in its own behalf gives the number as two witnesses whom plaintiff would be required to produce on a trial in Kansas. It is important in this connection to remember that the cause of action arose in that state.

The Supreme Court in the International Shoe Co. case, supra [326 U.S. 310, 66 S. Ct. 158], in referring to the case of Hutchinson v. Chase & Gilbert, supra, said: "An 'estimate of the inconveniences' which would result to the corporation from trial away from its 'home' or principal place of business is relevant in this connection." That connection relates to its "presence" in the district. See: Jablonski v. Southern Pac. Ry. Co., D.C., 76 F.Supp. 1022; Zuber v. Pennsylvania R. Co. (Slaton and Hall v. Chicago, Rock Island & Pacific) D.C., 82 F.Supp. 670; Michigan Central R. Co. v. Mix, 278 U.S. 492, 49 S.Ct. 207, 73 L.Ed. 470; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

█ Holding that this Court does not have jurisdiction, it is not necessary to pass on the question of whether Zadach was a "general agent". The effectiveness of any service on him must be determined under New York law. Diamond v. New York, S. & W. R. Co., D.C., 18 F.Supp. 605; Collins v. Erie R. Co., D.C., 6 F.Supp. 562; New York Civil Practice Act, § 229. However, it is not believed that he comes within the class of officers or individuals upon whom service could be made under that section 229. See: Miller v. The Sultana, D.C., 79 F.Supp. 877; Cohen v. American Window Glass Co., D.C., 41 F.Supp. 48; Taylor v. Granite State Provident Ass'n, 136 N.Y. 343, 32 N.E. 992; Yeckes-Eichenbaum, Inc. v. McCarthy etc., 290 N.Y. 437, 49 N.E.2d 517. If this question were material now, it might be necessary to take further proof.

Orders may be submitted to accord with this opinion.