HERSHEL RADIO COMPANY v. PENNSYLVANIA
RAILROAD COMPANY.

1. COURTS—FEDERAL CONSTITUTION—DECISIONS OF FEDERAL SUPREME
COURT BINDING ON STATE COURTS.
   In a case presenting assertion of rights secured by the Federal
   Constitution, the State courts are bound by the decisions
   of the supreme court of the United States.

2. COMMERCE—RAILROADS—SOLICITATION OF TRAFFIC—INTERSTATE
COMMERCE.
   The solicitation of traffic by railroads, in States remote from
   their lines, is a recognized part of the business of interstate
   transportation.

3. SAME—ADJUSTMENT OF CLAIMS—BURDEN ON INTERSTATE COM-
MERCE.
   The adjustment of claims against a railroad for damage to
   freight, involving the appearance of employees in courts
   away from their customary occupation, impairs efficiency
   in operation and constitutes a burden on interstate com-
   merce to which the railroad may not be subjected without
   its consent in a State where it merely solicits business but
   conducts no other operations.

4. CORPORATIONS—MERE SOLICITATION OF INTERSTATE BUSINESS—
PROCESS.
   Mere solicitation of interstate transportation business by a
   railroad company in a State in which it has no tracks and
   runs no trains is not doing business within such State so as
   to make it amenable to process therein.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur, Constitutional Law § 104.
[2] 11 Am Jur, Commerce §§ 45–48.
[3, 4] 23 Am Jur, Foreign Corporations § 381.
[3, 4] Foreign transportation company as subject to service of
process in State in which it merely solicits interstate or extra-
state business. 46 ALR 570, supplemented 95 ALR 1478.

Appeal from Wayne; Brennan (John V.), J.   Submitted April 18, 1952.   (Docket No. 29, Calendar No. 44,990.)   Decided June 27, 1952.

Action by Hershel Radio Company, a copartnership, against Pennsylvania Railroad Company, a Pennsylvania corporation, and Southern Pacific Company, a Delaware corporation, for damages to goods shipped over defendant carriers.   Motion by Southern Pacific Company to dismiss granted.   Plaintiff appeals.   Affirmed and remanded.

*Rosenbaum, Nathanson & Victor,* for plaintiff.

*Dyer, Angell, Meek & Batten (A. D. Ruegsegger,* of counsel), for defendant Southern Pacific Company.

BUTZEL, J.   Plaintiff, Hershel Radio Company, a partnership whose 2 members are residents of the State of Michigan, brought suit against defendants Pennsylvania Railroad Company, a Pennsylvania corporation, and Southern Pacific Railroad Company, a Delaware corporation.   Plaintiff claims damage to its goods that were shipped from Stockyards, California, to Detroit, Michigan, and for which the defendant Southern Pacific Company issued its bill of lading to plaintiff on August 7, 1948, at Stockyards, California.   The shipment in question was routed over the lines of the Southern Pacific Company by reason of the previous solicitation of business by agents of the Southern Pacific in Detroit at its Detroit offices.   These agents made arrangements for the delivery of the goods to Detroit over a connecting carrier, the Pennsylvania Railroad Company.

Defendant Pennsylvania Railroad entered a general appearance, but the Southern Pacific Company,

hereinafter referred to as defendant, appeared specially and moved to quash service of summons and to dismiss the action as to it.   Defendant made its motion on the grounds that it is a foreign corporation and that it was not, at the time of. service of the summons or at the time of the transaction, engaged in business in the State of Michigan, and that to subject that company to suits in the State of Michigan without its consent would impose an undue burden on interstate commerce in violation of the commerce clause of the Federal Constitution.* The trial court granted the motion, and plaintiff appeals.

Southern Pacific sets forth the facts in regard to its activities in Michigan as follows: It maintains an office in Detroit employing 10 men for the purpose of soliciting business, both passenger and freight, from those whose transportation needs could be served by it.   It acts as a bureau of information regarding routings, rates and other pertinent facts. Its office address and telephone number in Detroit are listed under the company name.   Its Detroit agents have no authority to adjust claims or to issue regular bills of lading.   The company operates and owns no track or railroad equipment within the State of Michigan, the most eastern terminus of its operations being New Orleans, Louisiana.   No tickets are sold in Michigan, and no other contracts entered into; there is no employee in the State who is authorized to accept service of summons.   The Detroit office may also issue exchange bills of lading in place of the original ones.   These are either to provide for export shipments and involve charges to be paid for the overseas transportation, or for a diverting of the shipment to a different destination or consignee at the request of the shipper.   Any

* US Const, art 1, § 8.—Reporter.

moneys paid for such exchange bills of lading are deposited to the credit of the Southern Pacific Company in a bank, but no person in Michigan is authorized to draw upon such bank account, the funds being transferred periodically to the office of the Southern Pacific in California. Plaintiff, on these facts, contends that such activity within the State constitutes presence within the State and doing business within the State, and thus makes the Southern Pacific amenable to process in an action *in personam* by a citizen of the State, where the cause of the action arises from the very activity of such foreign corporation within the jurisdiction.

The trial court found that the issue herein was determined by *Smart* v. *Florida East Coast Railway Company,* 240 Mich 542. The facts therein are quite similar to those in the instant case. Southern Railway Company and B & O Railroad Company brought motions to set aside service of process in action for damages done to plaintiff's household goods in transporting them from Florida to Detroit over the lines of defendants. Both were foreign corporations, not operating in Michigan. Both maintained offices in Detroit for the solicitation of business, employing clerks, with offices and telephones listed under their names. The B & O sold tickets over its lines outside of Michigan in cooperation with the Pere Marquette Railroad. The Michigan Supreme Court, citing *Green* v. *Chicago, Burlington & Quincy R. Co.,* 205 US 530 (27 S Ct 595, 51 L ed 915); *Philadelphia & Reading R. Co.* v. *McKibbin,* 243 US 264 (37 S Ct 280, 61 L ed 710); and *Davis* v. *Farmers Cooperative Equity Co.,* 262 US 312 (43 S Ct 556, 67 L ed 996), and most particularly relying on the latter, held that the statute authorizing service on the defendants, as applied, was in conflict with the commerce clause of the Federal Constitution and invalid, because defendants were not "doing business" within the State.

*Smart* v. *Florida East Coast Railway Company*
will control our decision here unless there has been
a substantial change in the prevailing Federal law
concerning service on interstate carriers. We said,
in the *Smart Case* (at p 544):

"The case presents the assertion of rights secured
by the Federal Constitution, and by the decisions of
the final interpreter of that Constitution, the su-
preme court of the United States, we are and should
be bound."

First we turn to an examination of the case upon
which we previously relied, *Davis* v. *Farmers Coop-
erative Equity Company, supra.* A Minnesota stat-
ute provided that any foreign corporation having an
agent in the State for the solicitation of freight and
passenger traffic on lines without the State might
be served by delivering copy of the summons to such
agent. Defendant, Atchison, Topeka & Santa Fe
Railroad, maintained a Minnesota soliciting division
similar to that with which we are here concerned.
Mr. Justice Brandeis, who wrote for the court, said:

"Solicitation of traffic by railroads, in States re-
mote from their lines, is a recognized part of the
business of interstate transportation. * * *
"That the claims against interstate carriers for
personal injuries and for loss and damage of freight
are numerous; that the amounts demanded are large;
that in many cases carriers deem it imperative, or
advisable, to leave the determination of their liabil-
ity to the courts; that litigation in States and juris-
dictions remote from that in which the cause of ac-
tion arose entails absence of employees from their
customary occupations; and that this impairs effi-
ciency in operation, and causes, directly and indirect-
ly, heavy expense to the carriers; these are matters
of common knowledge. Facts, of which we, also,
take judicial notice, indicate that the burden * * *.
imposed specifically by the statute here assailed is

a heavy one; and that the resulting obstruction to commerce must be serious."

No subsequent determination applying to service of process upon an interstate carrier has been made by the United States supreme court.

Plaintiff, however, contends that the result reached by the high court in *International Shoe Co. v. State of Washington,* 326 US 310 (66 S Ct 154, 90 L ed 95), and its application in the lower court decisions, dictate an opposite result in the instant case. In the *International Shoe Company Case,* the company had its home offices in Missouri, but employed 11 to 13 salesmen, residents of Washington, for the purpose of soliciting orders from prospective Washington buyers. Each salesman was provided with a line of shoe samples for the display of which temporary and occasionally permanent display rooms were rented. Their activities resulted in a large volume of business and were systematic and continuous. Process was served on one of the salesmen and notice was given by registered mail to the corporation at its home office, pursuant to Washington statute. It was held that the corporation was "doing business" in Washington. Citing former decisions as to amenability of the corporation to service it was reaffirmed that mere solicitation alone was not a basis for jurisdiction, but that a systematic and continuous course of business, in the solicitation of orders and the shipment of a large volume of merchandise and the maintenance of permanent display rooms and residence of salesmen did constitute "doing business" in the jurisdictional sense. The court said:

"It is evident that these operations establish sufficient contacts or ties with the State of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial jus-

tice, to permit the State to enforce the obligations which appellant has incurred there."

It should be noted that the court's decision was predicated on an examination of the due process clause and not on an examination of a possible burden on interstate commerce.

It is obvious that there existed a scope and permanency of activity in the *International Shoe Case* not present here. Even if we concede that it manifests a somewhat broadened concept it is significant that no case has decided that a foreign railroad which only solicits business within the State of the forum is amenable to process therein. That there has been no case directly overruling the *Davis Case* is apparent from the examination of lower court decisions.

*Lasky* v. *Norfolk & W. R. Co.* (CCA), 157 F2d 674, involved suit brought in the Northern District of Ohio against a defendant railroad operating only in the Southern District of Ohio. Although the court considered the activities of the railroad in the Northern District and held that it was doing business therein, the basis of its decision was the Federal Rules of Civil Procedure which have been construed to mean that in such a situation, service may properly be had in any district of a proper State.

*Bomze* v. *Nardis Sportswear, Inc.* (CCA), 165 F2d 33, relied on by plaintiff, is not applicable here as it involves the problem of whether or not a finding of agency could be made to justify process. It did not deal with the soliciting activities of a carrier. Similarly, see *Bach* v. *Friden Calculating Machine Co.* (CCA), 167 F2d 679. *Kilpatrick* v. *Texas & P. R. Co.* (CCA), 166 F2d 788, although it involved a foreign railroad corporation soliciting freight and passenger business, involved a decision predicated

on the provisions of the Federal employers' liability act and thus is not applicable here.

Defendants cite *Fiorella* v. *Baltimore & Ohio R. Co.*, 89 F Supp 850, and *Goldstein* v. *Chicago, R. I. & P. R. Co.*, 93 F Supp 671. These seem to indicate that the *International Shoe Case* has not changed the rules applicable to service of process on interstate carriers. *Fiorella* v. *Baltimore & Ohio R. Co.* involved action by a resident plaintiff in a Pennsylvania district court against the Chicago, Milwaukee, St. Paul & Pacific Railroad. Defendant had a Philadelphia office with 7 employees engaged in the solicitation of business in the customary fashion.

The court in the *Fiorella Case* noted that "the supreme court established the 'solicitation doctrine'— that is, a railroad company which has no tracks and runs no trains within a district is not doing business within that district for the purpose of service of process merely because it rents an office, hires an agent, and advertises these facts in order to solicit freight and passenger traffic over its lines in other States."

In *Goldstein* v. *Chicago, R. I. & P. R. Co.*, a New York plaintiff, brought suit in a New York forum against the Rock Island, a foreign carrier. The Rock Island had 3 permanent employees in New York State engaged in the usual business of solicitation. Citing the *Green* and *McKibbin Cases*, the court applied the "mere solicitation" rule and denied jurisdiction. *Backer* v. *Gonder Ceramic Arts, Inc.*, 90 F Supp 737, cited by the plaintiff, also involved a finding of agency and did not involve a carrier.

The very recent case of *Memphis Steam Laundry Cleaner, Inc.*, v. *Mississippi State Tax Commission*, 342 US 389 (72 S Ct 424, 96 L ed 436), decided by the United States supreme court on March 3, 1952, involves an entirely different question but indicates how far the court has gone in considering the effect

of solicitation in interstate commerce. The case involved the right to demand a privilege fee by the State of Mississippi to be paid by a transient vendor or dealer for the privilege of soliciting business in Mississippi, and exacted a fee of $50 for each vehicle used in carrying on such business. The laundry company operated a laundry and cleaning establishment in Memphis, Tennessee. It sent 10 of its trucks into Mississippi where its drivers picked up, delivered and collected for laundry and cleaning and also sought to acquire new customers. The laundry resisted the payment of such license fees. A number of questions arose but the amenability of the laundry company to process was not considered. However, in holding in favor of the laundry company, the court held that the solicitation of business by a nonresident corporation in a foreign State did not of itself constitute doing business therein as it was a necessary function in interstate commerce. The court said:

"In the long line of 'drummer' cases, beginning with *Robbins* v. *Shelby County Taxing District,* 120 US 489 (1887) (7 S Ct 592, 30 L ed 694), this court has held that a tax imposed upon the solicitation of interstate business is a tax upon interstate commerce itself. Whether or not solicitation of interstate business may be regarded as a local incident of interstate commerce, the court has not permitted State taxation to carve out this incident from the integral economic process of interstate commerce. As the court noted last term in a case involving door-to-door solicitation of interstate business, 'Interstate commerce itself knocks on the local door.'

"If the Mississippi tax is imposed upon the privilege of soliciting interstate business, the tax stands on no better footing than a tax upon the privilege of doing interstate business. A tax so imposed cannot stand under the commerce clause. *Spector Motor*

*Service, Inc.,* v. *O'Connor,* 340 US 602, 608, 609 (1951) (72 S Ct 425, 95 L ed 573), and cases cited therein."

We have made a lengthy examination of pertinent decisions and find no reason why our decision in *Smart* v. *Florida East Coast Railway Company, supra,* should be overruled.

The order of the trial court setting aside process as to defendant Southern Pacific Company will be affirmed, with costs to appellee, and the case remanded to the trial court for further proceedings in the main case.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

NORTH, C. J., did not participate in this decision.