Raymond D. AMBURN and Agro-Magnetics, Inc., Plaintiffs,

v.

HAROLD FORSTER INDUSTRIES, LTD. and Qsine Corporation, Ltd., Defendants.

Civ. A. No. 76–71002.

United States District Court, E. D. Michigan, S. D.

Dec. 14, 1976.

Owen E. Perry and Ernie L. Brooks, Southfield, Mich., for plaintiffs.

Emmett E. Eagan, Detroit, Mich., for defendants.

## OPINION AND ORDER QUASHING SERVICE OF PROCESS OF DEFENDANTS

CORNELIA G. KENNEDY, District Judge.

The defendants in this action, two Canadian corporations, have moved for dismissal for lack of jurisdiction over the person of either defendant.

Plaintiffs are a Michigan resident and a Michigan corporation, the patentee and exclusive licensee of a patent on a device which magnetically treats seeds to attempt to increase crop yields. Defendants are accused of manufacturing and selling a similar device which is alleged in Count I of the Complaint to infringe the plaintiffs' patent. Count II charges unfair competition by defendants in the manner in which they have promoted their product.

▮ No infringement is alleged to have occurred here in Michigan. As stated by the United States Supreme Court in *Carbice Corp. v. American Patents Development Co.*, 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819 (1931):

> Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee.

The invasion of that right would occur where the infringing article is sold or used or where infringement is induced. See *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975). None of these possible contacts are claimed to have occurred or existed in Michigan.

Further, defendants have established that they have not been present in Michigan, have never sold the infringing product in Michigan, and there is no claim that an infringing product has ever been brought to the State of Michigan for sale by others, nor have any orders been solicited in the State of Michigan. No agent of either defendant has claimed to have ever been in Michigan, or to have acted here either directly or indirectly. Thus, defendants neither have had nor presently have any contacts in the State of Michigan.

Further, it is not alleged or claimed that either defendant has engaged in unfair competition with plaintiffs in the State of Michigan.

The defendants do have representatives in Minnesota, Washington, Montana, Wisconsin, Iowa, Illinois and Indiana.

It is plaintiffs' contention that since they are Michigan residents and citizens and have been damaged by reason of defendants' sale or delivery of the infringing product in the states noted above and that since plaintiffs' infringement claim is a federally created cause of action, Fifth Amendment due process requirements can be met by aggregating defendants' contacts in all 50 states and service of process may be made under the Michigan long-arm statute, M.C.L.A. § 600.705(2).

▮ Since neither defendant is or has been present in the State of Michigan, or had any contacts or agents here and neither can be served here, the motion to dismiss tests the due process limits of the federal court's jurisdiction, as well as restrictions or limitations on that jurisdiction by court rule or statute. Count I, the patent infringement claim, is a federal cause of action, hence the extent of the Court's jurisdiction is governed by federal law; service of process is likewise governed by federal law. However, since Rule 4(d)(7) and 4(e) of the Federal Rules of Civil Procedure permit service outside a state in the manner permitted by the statutes of the forum state, the Michigan long-arm statute and decisions construing it must also be considered.[1]

---

1. The Michigan long-arm statute must also be considered in connection with Count II, where jurisdiction is founded upon diversity of citizenship.

Although the record reveals no contacts between defendants and the State of Michigan, it is clear that defendants do a substantial and continuous business in the United States, limited to the seven states named above. In similar circumstances, several courts have determined that personal jurisdiction is present on the basis of the defendants' "aggregate contacts" with the United States. One such court has defined the appropriate test, as follows:

> When a federal court is asked to exercise personal jurisdiction over an alien defendant sued on a claim arising out of federal law, jurisdiction may appropriately be determined on the basis of the alien's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone.

*Cryomedics, Inc. v. Spembly, Ltd.*, 397 F.Supp. 287, 290 (D.Conn., 1975), citing Von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L. Rev. 1121, 1123–25 n. 6 (1966).

 In the instant case the aggregate contacts of each defendant within the 50 states would appear to be sufficient to give the United States, as a sovereign, jurisdiction over defendants. Those contacts are sufficient for the Court to find that defendants invoked the benefits and protection of the laws of the United States, and it is fair for the United States to subject them to personal jurisdiction for their acts and conduct within the United States. As stated by Judge Wilson in his scholarly opinion in *First Flight Co. v. National Car Loading Corp.*, 209 F.Supp. 730, 736 (E.D.Tenn., 1962)

> One fundamental principle of the Anglo-American law of jurisdiction is that a sovereignty has personal jurisdiction over any defendant within its territorial limits, and that it may exercise that jurisdiction by any of its courts able to obtain service upon the defendant.

The jurisdiction of the United States to the extent it wishes to exercise it, is limited only by the due process requirements of the Fifth Amendment; i. e., that the defendant has such "minimum contacts" with the state that the exercise of jurisdiction does not "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945): *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). Although these cases dealt with Fourteenth Amendment due process restrictions on the states, their reasoning applies equally to the Fifth Amendment,[2] since the sovereign powers of the United States are at least as broad as those of its states.

Although some decisions have limited the personal jurisdiction of federal courts to the same jurisdiction as the forum state and required minimum contacts in the forum state, the aggregate contacts test would seem the correct one. See *Cryomedics, Inc. v. Spembly, Limited*, 397 F.Supp. 287 (D.Conn., 1975), where it was applied in a patent infringement case; *Holt v. Klosters Rederi A/S*, 355 F.Supp. 354 (W.D.Mich., 1973), an action for death on the high seas; and *Edward J. Moriarty & Co. v. General Tire and Rubber Co.*, 289 F.Supp. 381 (S.D. Ohio, 1967), an action under the Sherman Act.

 The United States has, however, by rule, imposed restrictions upon the exercise of personal jurisdiction by its courts. Rule 4(f) of the Federal Rules of Civil Procedure provides:

> Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

Congress has in some few instances such as antitrust cases provided for nation-wide

---

**2.** See Green, *Federal Jurisdiction in Personam of Corporations and Due Process*, 14 Vand.L. Rev. 1967.

service of process. It has not done so for patent infringement claims. Thus, where, as here, the defendants are foreign corporations, federal law generally requires, in view of Rule 4(f), that the corporation have an agent within the forum state.

Plaintiffs do not contest this general proposition but assert that pursuant to Rule 4(d)(7) service in the instant case may be made under the Michigan long-arm statutes, M.C.L.A. § 600.715(2) which provides:

Same; limited personal jurisdiction.

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

The Michigan long-arm statute is an attempt by the state legislature to provide the broadest jurisdiction it could under the due process principle of *International Shoe v. Washington, supra.* The Committee comments on sections 701–741 of the Revised Judicature Act of 1961 leave no doubt that the legislature comprehended the effect of the principles established by *International Shoe* and its progeny. See *Committee notes, RJA §§ 701–741,* preceding M.C.L.A. § 600.701.

It remains, however, a state statute and the power of the State of Michigan is limited by the due process requirements of the Fourteenth Amendment. There must be some contact of a defendant with Michigan. It must have invoked the benefits or protection of the laws of the State of Michigan, if not directly at least indirectly through an agent as in *Honeywell, Inc. v. Metz Apparatewerke, supra.*

Plaintiffs urge that their citizenship and residence in the State of Michigan are sufficient. They have been injured and since the person of one plaintiff and the business operation of the other are here, those injuries, they assert, are "consequences" which defendants caused to occur here. They rely upon the decision of the Michigan Court of Appeals in *Dornbos v. Adkins Trust Co.,* 9 Mich.App. 515, 157 N.W.2d 498 (1968) as supporting that position. In this Court's opinion *Dornbos* is not controlling state law. Further, if it is, it is distinguishable on its facts. Finally, literal application of its holding to cases in which the only "consequence" alleged to occur is the residence of an injured party in Michigan, violates the due process requirement of the Fourteenth Amendment, as stated in *International Shoe, supra* and *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

In *Dornbos,* the defendant was a non-resident corporation engaged in the transportation of goods in interstate commerce. The corporation had contracted to transport, as an out-of-Michigan connecting carrier, a shipment of fresh fish which originated from the plaintiff in Michigan. The shipment was negligently delayed, the fish spoiled, and some fatalities resulted among persons who ultimately consumed the fish. The adverse publicity pursuant to these deaths was alleged by the plaintiff to have caused economic harm to its business in Michigan. The plaintiff brought an action in tort against the defendant and sought jurisdiction under the tortious "consequences" language of the Michigan long-arm statute.

The Court of Appeals upheld the validity of process served outside Michigan under this statute, relying substantially on the decision of *Gray v. American Radiator and Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), and distinguishing a prior Michigan Supreme Court decision, *Hershel Radio Co. v. Penn R. Co.*, 334 Mich. 148, 54 N.W.2d 286 (1952).

Analysis of those cases reveals the infirmity of the *Dornbos* decision. The Court in *Dornbos* adopted the trial judge's opinion, which states that there is no appreciable difference between the facts in *Gray* and the facts there presented. 9 Mich.App. at 520–521, 157 N.W.2d 498. In fact, they were significantly different. In *Gray*, a negligently manufactured component of a water heater malfunctioned in Illinois, injuring the Illinois plaintiff. The component had been manufactured by an Ohio corporation which did no business and had no agents in Illinois. The Illinois long-arm statute permitted jurisdiction over non-residents who caused "[t]he commission of a tortious act within this State." Ill.Rev. Stat.1959, Chap. 110, par. 17. In holding that a tortious act had occurred within the meaning of the statute and that the statute so construed did not violate due process, the court focused on the non-resident corporation's relationship with Illinois. The *International Shoe* test of sufficient minimum contacts was applied. 176 N.E.2d at 763.

After stating that the volume of business was not the only measure of contact, and that where a single act or transaction has a substantial connection with the forum state it may be enough to meet the due process test, the Court said:

> In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business

may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State. 176 N.E.2d at 766.

The opinion later states:

> As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. 176 N.E.2d at 766.

Ultimately the Court held:

> The principles of due process relevant to the issue in this case support jurisdiction in the court where both parties can most conveniently settle their dispute. The facts show that the plaintiff, an Illinois resident, was injured in Illinois. The law of Illinois will govern the substantive questions, and witnesses on the issues of injury, damages and other elements relating to the occurrence are most likely to be found here. Under such circumstances the courts of the place of the injury usually provide the most convenient forum for trial. 176 N.E.2d at 766, 767.

Finally, after referring to other cases considering the due process limits of long-arm jurisdiction, the Court said:

> Little purpose can be served, however, by discussing such cases in detail, since the existence of sufficient "contact" depends upon the particular facts in each case. In any event we think the better rule supports jurisdiction in cases of the present kind. *We conclude accordingly that defendants' association with this State is sufficient to support the exercise of jurisdiction.* 176 N.E.2d at 767. [Emphasis added]

It is clear that the *Gray* decision was based on several facts which distinguish it from *Dornbos*. First, the non-resident corporation in *Gray*, through its ultimate distribution of components in Illinois, had "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." See *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

It is also clear that the tortious act of the defendant in *Gray* "ha[d] a substantial connection with the State of the forum," a test approved by the United States Supreme Court in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The component was shipped into Illinois, the injury occurred there, the plaintiff was an Illinois resident, and Illinois law would govern the case.

In *Dornbos*, there was no showing that the defendant had invoked the benefits and protection of Michigan law in the conduct of its business. Additionally, there was no substantial connection of the defendant's act with Michigan. The only connection at all was that the plaintiff was a Michigan resident, and as a result Michigan was the place where the economic harm was being suffered. Finally, while it was clear in *Gray* that Illinois was the most convenient forum in which to litigate issues of liability and damages, it is questionable whether Michigan was the most convenient forum in *Dornbos*.

Most important, however, is that the *Gray* decision was based on an application of the *International Shoe* due process principles. *Dornbos* avoids a disciplined application of *International Shoe* principles in favor of analogizing to the *Gray* holding.

Further, although the Court of Appeals states in *Dornbos* that it is distinguishing the decision of the Michigan Supreme Court in *Hershel Radio Co. v. Penn R. Co.*, 334 Mich. 148, 54 N.W.2d 286 (1952), it utterly fails to do so. In *Hershel*, a foreign railroad company was the originating shipper for goods damaged in transit to Michigan. The foreign corporation, Southern Pacific, had an office in Detroit employing ten agents who solicited both passenger and freight traffic, and gave out information as to routing rates and other matters. The office's telephone number and address were listed in the Detroit telephone directory. The company's agents had no authority to adjust claims or to issue regular bills of lading, or to otherwise commit the company. Service of process was made on the corporation's Detroit agents, as was permitted under the then existing jurisdictional statute, Compiled Laws of Michigan, 1929, § 14094.

The *Hershel* case raised two issues: First, whether the exercise of jurisdiction over the non-resident corporation would comprise an undue burden on interstate commerce; and second, would such an exercise of jurisdiction violate the due process principles of *International Shoe?*

The Court relied on *Davis v. Farmer's Cooperative Equity Co.*, 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996 (1923), in deciding that upholding service would be unduly burdensome on interstate commerce.

The Court went on to resolve the due process issue in favor of the non-resident defendant, based on its application of *International Shoe:*

> It is obvious that there existed a scope and permanency of activity in the *International Shoe* case not present here. Even if we concede that it manifests a somewhat broadened concept it is significant that no case has decided that a foreign railroad which only solicits business within the State of the forum is amenable to process therein. 334 Mich. at 154, 54 N.W.2d at 288.

Although *Hershel* was decided shortly after *International Shoe* and before the subsequent expansion of that case's rationale, it is nonetheless important to note that the decision in *Hershel* was based on due process principles. The *Dornbos* decision suggests that *Hershel* was inapplicable because it was grounded on an earlier statute re service of process and its decisional value was terminated by the subsequent passage of the Revised Judicature Act of 1961,

which included M.C.L.A. § 600.705(2). This is erroneous since *Hershel* was decided on due process principles and not statutory construction. The subsequent passage of M.C.L.A. § 600.705(2) could not expand jurisdiction beyond the limits of due process principles.

Thus, since *Dornbos* avoids the application of relevant Michigan precedent which was based on substantially similar facts and an application of *International Shoe* principles (*Hershel*) in order to apply an Illinois case based on substantially dissimilar facts but also an application of *International Shoe* principles (*Gray*), it is not persuasive authority.

The due process principles of *International Shoe* and its progeny control the validity of service of process made under a state's long-arm statute. A more recent Michigan Court of Appeals decision presents a better reasoned analysis of the reach of the Michigan long-arm statute. *Khalaf v. Bankers and Shippers Insurance Co.*, 62 Mich.App. 678, 233 N.W.2d 696 (1975), *leave to appeal granted*, 395 Mich. 814 (1975).

In *Khalaf*, the judgment creditor of an uncollectible machine repair company sought to bring an action against the debtor's insurer and its agent for their failure to provide the debtor with certain coverage that would have discharged the debtor's liability for negligent repair of a machine which caused injury to the judgment creditor in Michigan.

The machine repair company operated in Illinois, but had solicited the involved repair work in Michigan. However, the insurer was a New York corporation without contacts in Michigan. The insurer's agent was an Illinois resident who had never been a resident of Michigan nor conducted any business in Michigan. The only basis for personal jurisdiction was the allegation that the defendants were negligent in their failure to procure coverage for the type of accident that caused the plaintiff's injuries, and that as a consequence of this failure, the plaintiff suffered economic harm because the insured had become uncollectible. 62 Mich.App. at 681, 233 N.W.2d 696. Per-

sonal jurisdiction was sought based upon M.C.L.A. § 600.705(2); M.S.A. 27A.705(2):

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

The Circuit Court (Wayne) granted the defendant's motion to quash service of process. The Court of Appeals affirmed on the basis that personal jurisdiction could not be had without violation of principles of due process. 62 Mich.App. at 681, 682, 233 N.W.2d 696.

The Court of Appeals acknowledged that under M.C.L.A. § 600.705(2) personal jurisdiction over a non-resident tortfeasor may exist where the consequence of a tortious act committed elsewhere occurs in Michigan. However, the Court went on to say that due process principles govern such questions of jurisdiction. The decision then applied the *International Shoe* test of minimum contacts as expressed in *Shepler v. Korkut*, 33 Mich.App. 411, 414–415; 190 N.W.2d 281, 283 (1971):

jurisdiction exists if defendants . . . had such "minimum contacts" with this State that maintenance of the action would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is sufficient for purposes of due process that the suit be based on a contract which had a substantial connection with the State of the forum. A single transaction may be sufficient to meet the "minimum contacts" test. The State of the forum may have a manifest interest in providing effective means of redress for its residents, considering the particular circumstances of the case and that crucial witnesses may be its residents. *McGee v. International Life Ins. Co.*, 355 U.S. 220,

78 S.Ct. 199, 2 L.Ed.2d 223 (1957). 62 Mich.App. at 680, 681, 233 N.W.2d 696. In the instant case there is simply no contact by defendants with Michigan. They received no benefits or protection from its laws. They incurred no obligations in Michigan. There is no connection between defendants and the State of Michigan, let alone substantial connection. The interpretation which plaintiffs seek to place on this statute would subject anyone who has caused any resident of Michigan damage in any way or anywhere to be sued in Michigan. It would equate "consequences" with "damages." Any Michigan citizen injured anywhere could sue in Michigan. It would substitute the plaintiffs' close contacts to the forum state for the due process requirements of the defendants' contacts. It would permit an injured plaintiff to forum shop—to move to Michigan, or any forum where the case law was more favorable to the plaintiffs' position, in order to bring suit there.

█ Fourteenth Amendment due process limitations make the Michigan long-arm statute unavailable as a vehicle to serve defendants who have no contacts with the State of Michigan. Cf. *Holt v. Klosters Rederi A/S,* 355 F.Supp. 354 (W.D.Mich., 1973). (It appears that in that case the defendant waived any objection to the manner in which service of process was made. See 355 F.Supp. at 358, where the court states "All other objections which defendant may have raised by such motion [to dismiss] have been waived" and its references in Footnote 4 to Rule 12(h) which expressly provides for waiver for failure to preserve certain defenses omitted from a motion to dismiss.) There is, therefore, no method by which defendants can be served, either in the federally created cause of action or in Count II, the unfair competition claim. Nor is there any likelihood they can be served in the future.

For the foregoing reasons the Court will GRANT the motion to quash service. If plaintiffs wish the action transferred to another district where service can be obtained they may request such transfer within 10 days of the date of this opinion; otherwise, the action will be dismissed without prejudice.